**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| GEORGE MOORE, on behalf of himself and others similarly situated, | : : : | CIVIL ACTION FILE NO. 1:21-cv-02403 |
| Plaintiff, | : : | |
| v. | : : | **FIRST AMENDED COMPLAINT – CLASS ACTION** |
| TORCHLIGHT TECHNOLOGY GROUP LLC, CALL CENTRIX LLC, CAROL STITZ, | : : : | **JURY TRIAL DEMANDED** |
| Defendants. | : : | |

Plaintiff George Moore (hereinafter referred to as "Plaintiff"), individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of his counsel, and on information and belief, as follows:

## NATURE OF ACTION

1. As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2. However, the TCPA does not only restrict robocalls, but also prohibits contact to individuals on the National Do Not Call Registry.

3. This case involves Torchlight Technology Group LLC's ("Torchlight's") and its agent, Call Centrix LLC's ("Call Centrix's"), telemarketing of goods and services despite not having the requisite consent to contact those individuals who, like the Plaintiff, were listed on the National Do Not Call Registry.

4. Because telemarketing campaigns use technology capable of generating thousands of similar calls per day, Plaintiff sues on behalf of a proposed nationwide class of other persons who received similar calls.

5. A class action is the best means of obtaining redress for the Defendants' illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## PARTIES

6. Plaintiff George Moore is an individual citizen and resident of this District.

7. Defendant Torchlight Technology Group LLC is a Delaware limited liability company with its principal place of business in Pennsylvania.

8. Defendant Call Centrix LLC ("Call Centrix") is a Delaware limited liability company with its principal place of business in Pennsylvania.

9. Defendant Carol Stitz is the owner, Chief Executive Officer, and operator of Call Centrix and was personally involved in the telemarketing at issue.

## JURISDICTION AND VENUE

10. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*.

11. This Court has personal specific jurisdiction over Defendants because they targeted and sent telemarketing calls into Illinois, just as they did with the Plaintiff.

12. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because the Plaintiff is a resident of this District, which is where he received the illegal telemarketing calls that are the subject of this putative class action lawsuit.

## TCPA BACKGROUND

13. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

<u>The National Do Not Call Registry</u>

14. § 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

15. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

16. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

17. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are made. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

Individual Officer Liability under the TCPA

18. Ms. Stitz is the owner and operator of Call Centrix and is liable for its conduct.

19. Under the TCPA, an individual such as Ms. Stitz may be personally liable for the acts alleged in this Complaint pursuant to 47 U.S.C. § 217 of the TCPA, which reads, *inter alia*:

> [T]he act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user *as well as of that person*.

*See* 47 U.S.C. § 217 (emphasis added).

20. When considering individual officer liability under the TCPA, other courts have agreed that a corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *See Jackson Five Star Catering, Inc. v. Beason*, 2013 U.S. Dist. LEXIS 159985, *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA 'where they had direct, personal participation in or personally authorized the conduct found to have violated the statute.'"); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

21. Ms. Stitz personally participated in the actions complained of by: (a) selecting some of the phone numbers that would be called including numbers on the National Do Not Call Registry; (b) attempting to avoid liability by scrubbing phone numbers against a list of individuals who had previously filed TCPA lawsuits instead of complying with the TCPA's Do Not Call provisions; (c) regularly communicating with and implementing instructions from Torchlight; and (d) personally authorizing any other conduct of Call Centrix.

**FACTUAL ALLEGATIONS**

22. Defendants are "persons" as the term is defined by 47 U.S.C. § 153(39).

23. Torchlight is an affiliate of Independence American Insurance Company that engages in telemarketing for that company, as it did with the Plaintiff, and other companies. Torchlight engaged Call Centrix to physically place telemarketing calls according to its specific instructions and then transfer those calls directly to Torchlight and ultimately the companies Torchlight telemarkets for.

24. At no point has the Plaintiff sought out or solicited information regarding Defendants or Independence American Insurance Company's goods and services prior to receiving the telemarketing calls at issue.

Calls to Plaintiff

25. Plaintiff Moore's telephone number, 630-XXX-1188, is a residential telephone line.

26. It is not associated with a business and is used by Mr. Moore only.

27. The telephone number has been on the National Do Not Call Registry since July 6, 2003.

28. Plaintiff Moore received several telemarketing calls from the "Medicare Verification Department", which is a name utilized by Call Centrix as part of its calling campaign for Torchlight, including at least on December 18, 2020, January 8, 14 and 27, 2021.

29. The caller claimed that they were offering him services associated with his Medicare insurance.

30. Plaintiff Moore then terminated the calls.

5

31. However, the calling conduct continued and Mr. Moore was called again on March 22, 2021.

32. Mr. Moore fully investigated the call and this time was transferred to "Gerardo Loera with IHC Specialty Benefits."

33. Mr. Loera then promoted the Independence American Insurance Company's Medicare supplemental insurance services.

34. Mr. Loera is licensed to offer Independence American Insurance Company's services.

35. Mr. Moore subsequently requested that he no longer receive calls and asked for a copy of the company's Do Not Call policy.

36. He did not receive one.

37. Mr. Moore then wrote to Independence American Insurance Company to identify the reason he received the calls.

38. He did not receive a substantive response.

39. The calls received by Plaintiff were sent by Defendants for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services as they seek to have him sign up for Independence American Insurance Company's services.

40. This was confirmed by the fact that, during the calls, Independence American Insurance Company Medicare supplemental insurance services were promoted.

41. These calls therefore qualified as telemarketing. 47 C.F.R. § 64.1200(f)(12).

42. Plaintiff and all members of the class defined below, have been harmed by the acts of Defendants because their privacy has been violated and they were subjected to annoying

and harassing calls that constitute a nuisance. The calls also occupied Plaintiff's telephone line from legitimate communication.

43. Plaintiff has not provided Defendants with his prior express written consent to place telemarketing calls to him.

### Torchlight's Liability for Call Centrix's Conduct

44. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd. 12391, 12397, ¶ 13 (1995).

45. In fact, the Federal Communication Commission has instructed that sellers may not avoid liability by outsourcing telemarketing to third parties:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) ("May 2013 FCC Ruling") (internal citations omitted).

46. On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously

7

liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."[1]

47. The May 2013 FCC Ruling held that, even absent evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. *Id*. at 6586, ¶ 34.

48. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

*Id.* at 6592, ¶ 46.

49. Torchlight is liable for the telemarketing calls that were initiated by Call Centrix before being transferred to Torchlight.

50. Torchlight hired Call Centrix to originate new business using telemarketing calls.

51. Torchlight could have restricted Call Centrix from calling consumers on the National Do Not Call Registry, but it did not.

---

[1] May 2013 FCC Ruling, 28 FCC Rcd. at 6574, ¶ 1.

52. Torchlight accepted the benefits of Call Centrix's illegal telemarketing by accepting live transfers of leads directly from Call Centrix, despite the fact that those leads were generated through illegal telemarketing.

53. Torchlight had absolute control over whether, and under what circumstances, it would accept a customer.

54. Torchlight determined the parameters and qualifications for customers to be transferred and required Call Centrix to adhere to those requirements.

55. Torchlight knew (or reasonably should have known) that Call Centrix was violating the TCPA on its behalf and failed to take effective steps within its power to force the telemarketer to cease that conduct. Any reasonable company that accepts telemarketing call leads from lead generators would, and indeed must, investigate to ensure that those calls were made in compliance with TCPA rules and regulations.

56. Torchlight gave interim instructions to Call Centrix, including instructions as to the geographic areas to target, the hours Call Centrix could call, and the volume of calling.

57. Torchlight monitored Call Centrix's performance on a daily or near-daily basis and communicated with Call Centrix regularly, including giving Call Centrix instructions to increase or decrease the daily volume of transfers to suit Torchlight.

58. By having Call Centrix initiate the calls on its behalf to generate new business, Torchlight "manifest[ed] assent to another person ... that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

59. Call Centrix logged into and transferred customer information directly to Torchlight's call tracking system. Thus, the company that Torchlight hired has the "ability ... to enter customer information into the seller's sales or customer systems," as discussed in the May 2013 FCC Ruling.

60. Torchlight reviewed and approved the Call Centrix scripts for determining whether a customer was eligible to be transferred, as discussed in the May 2013 FCC Ruling.

61. Torchlight continued its relationship with Call Centrix throughout the full term of their contract into November 2021 despite Plaintiff filing the original Complaint in this action against Independence American Insurance Company on May 5, 2021 and despite being fully aware of that lawsuit and in fact participating in discovery in the lawsuit by gathering certain documents and providing them to the defendant.

62. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships … through discovery, if they are not independently privy to such information." *Id.* at 6592-593, ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593, ¶ 46.

## CLASS ACTION ALLEGATIONS

63. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

64. Plaintiff brings this action on behalf of himself and the following class (the "Class") pursuant to Federal Rule of Civil Procedure 23.

65. Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

> **National Do Not Call Registry Class**: All persons in the United States whose, (1) telephone numbers were on the National Do Not Call Registry for at least 30 days, (2) but received more than one telephone solicitation from or on behalf of Defendants (3) within a 12-month period, (4) from four years prior the filing of the Complaint.

Excluded from the Class are counsel, the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

66. The Plaintiff is a member of and will fairly and adequately represent and protect the interests of the Class as he has no interests that conflict with any of the Class members.

67. Plaintiff and all members of the Class have been harmed by the acts of the Defendants, including, but not limited to, the invasion of their privacy.

68. This Class Action Complaint seeks injunctive relief and money damages.

69. The Class as defined above are identifiable through dialer records, other phone records, and phone number databases.

70. Plaintiff does not know the exact number of members in the Class, but Plaintiff reasonably believes Class members number, at minimum, in the hundreds in the Class.

71. The joinder of all class members is impracticable due to the size and relatively modest value of each individual claim.

72. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

73. There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact, referred to above, involving the claims predominate over questions which may affect individual class members because of the uniformity of the telemarketing conduct.

74. There are numerous questions of law and fact common to Plaintiff and to the proposed Class, including but not limited to the following:

> (a) whether multiple telemarketing telephone calls were made promoting the goods or services to members of the National Do Not Call Registry Class;
>
> (b) whether the telemarketing calls at issue were made to Plaintiff and members of the Class without first obtaining prior express written consent to make the calls;
>
> (c) whether Defendants' conduct constitutes a violation of the TCPA; and
>
> (d) whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct.

75. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class and have the financial resources to do so.

76. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of Class

members, which will be ascertainable from records maintained by Defendants and/or their agents.

77. The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

**FIRST CAUSE OF ACTION**
**Violation of the Telephone Consumer Protection Act**
**(47 U.S.C. 227, et seq. and 47 C.F.R. §§ 64.1200(c))**
**on behalf of the National Do Not Call Registry Class**

78. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

79. Defendants violated the TCPA and the Regulations by making, or having their agent make, two or more telemarketing calls within a 12-month period on Defendants' behalf to Plaintiff and the members of the National Do Not Call Registry Class while those persons' phone numbers were registered on the National Do Not Call Registry.

80. As a result of Defendants' violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and National Do Not Call Registry Class members are entitled to an award of up to $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(c)(5).

81. Plaintiff and Class Members are entitled to an award of treble damages if their actions are found to have been knowing or willful.

82. Plaintiff and National Do Not Call Registry Class members are also entitled to and do seek injunctive relief prohibiting the Defendants from advertising their goods or services, except for emergency purposes, to any number on the National Do Not Call Registry in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A. Injunctive relief prohibiting Defendants from making telephone calls advertising goods or services, except for emergency purposes, to any number on the National Do Not Call Registry in the future;

B. As a result of Defendants' negligent, willful and/or knowing violations of 47 C.F.R. § 64.1200(c), Plaintiff seeks for himself and each member of the Class up to treble damages, as provided by statute, of up to $1,500 for each and every violation of the TCPA;

C. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing Class the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

D. Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial as to all claims of the complaint so triable.

PLAINTIFF,
By his attorneys

*/s/ Anthony I. Paronich*
Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

Brian K. Murphy
Jonathan P. Misny
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH 43215
(614) 488-0400
(614) 488-0401 facsimile
murphy@mmmb.com
misny@mmmb.com