**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| GEORGE MOORE, on behalf of himself and others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>TORCHLIGHT TECHNOLOGY GROUP LLC, CALL CENTRIX LLC, CAROL STITZ,<br><br>        Defendants.<br><br>TORCHLIGHT TECHNOLOGY GROUP LLC,<br><br>      Cross-Claim Plaintiff<br><br>v.<br><br>CALL CENTRIX LLC,<br><br>      Cross-Claim Defendant | CIVIL ACTION FILE NO. 1:21-cv-2403 |

**MEMORANDUM OF LAW IN SUPPORT OF TORCHLIGHT TECHNOLOGY GROUP LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST CALL CENTRIX LLC FOR CONTRACTUAL INDEMNITY AND BREACH OF CONTRACT**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................... 1

SUMMARY OF UNDISPUTED FACTS ................................................................................... 3

      I.      Call Centrix was Contractually Required to Maintain and Produce Records ......... 3

      II.     Call Centrix was Contractually Required to Obtain Insurance Coverage .............. 4

      III.    Call Centrix is Contractually Required to Indemnify and Defend Torchlight ........ 4

      IV.    Call Centrix was Contractually Required to Ensure Vendor Compliance.............. 5

      V.     Torchlight Met its Contractual Obligations and Terminated the Agreement ......... 6

ARGUMENT .................................................................................................................................. 6

      I.      Legal Standard ........................................................................................................ 6

      II.     Call Centrix Must Indemnify and Defend Torchlight ............................................. 7

            A.     Call Centrix Must Indemnify Torchlight for all Losses ............................. 7

            B.     Call Centrix Must Compensate Torchlight for its Defense in this Case ..... 9

      III.    Call Centrix Breached the Agreement .................................................................. 10

            A.     Call Centrix Breached its Duty to Maintain and Produce Records .......... 11

            B.     Call Centrix Breached its Duty to Obtain Insurance Coverage ................ 12

            C.     Call Centrix Breached its Duty to Indemnify and Defend Torchlight ...... 12

            D.     Call Centrix Breached its Duty to Ensure its Vendors Fully Complied
                 with the Terms of the Agreement ............................................................ 13

CONCLUSION ............................................................................................................................. 14

# **TABLE OF AUTHORITIES**

*Camenisch v. Allen*, 44 A.2d 309 (1945) …….…………………………………………………..10

*Consol. Rail Corp. v. Delaware River Port Auth.*, 880 A.2d 628 (Pa. Super. Ct. 2005) ………… 7

*Hanover Ins. Co. v. Northern Bldg. Co.*, 751 F.3d 788 (7th Cir. 2014) …………………….... 6,7

*Fidelity-Philadelphia Trust Co. v. Philadelphia Transp. Co.*, 404 Pa. 541 (1961) …………….. 10

*Maule v. Philadelphia Media Holdings, LLC*, No. 08-3357, 2010 WL 914926 (E.D. Pa. 2010) 7-9

*Orbisonia-Rockhill Joint Mun. Auth. v. Cromwell Twp., Huntingdon Cnty.*, 978 A.2d 425 (Pa. Commw. Ct. 2009) ……………………………………………………………………………. 10

*Steuart v. McChesney*, 498 Pa. 45, 48-49 (1982) …………………………………………...11

*Vazquez v. TriAd Media Solutions, Inc.*, 797 F. App'x 723 (3d Cir. 2019) …………………… 8, 9

*Widmer Engineering, Inc. v. Dufala*, 2003 Pa. Super. Ct. 391, 837 A.2d 459, 462 (2003) ……… 8

Defendant/Cross-Claim Plaintiff Torchlight Technology Group LLC ("Torchlight"), by and through undersigned counsel and pursuant to Federal Rule of Civil Procedure 56, Local Rule 56.1(g), and the Court's September 30, 2022 Order (Dkt. No. 76), submits this Memorandum of Law in Support of its Motion for Partial Summary Judgment Against Cross-Claim Defendant Call Centrix LLC ("Call Centrix") for contractual indemnification and breach of contract.

## PRELIMINARY STATEMENT

Torchlight seeks to hold Call Centrix liable for its (admitted) failure to honor its duty of contractual indemnification and defense and its (admitted) breaches of contract. The record as to Torchlight's claims for contractual indemnification and breach of contract are undisputed; thus, no reasonable jury could find for Call Centrix, and summary judgment is warranted.

In his Amended Complaint, Plaintiff George Moore seeks to hold Torchlight and Call Centrix liable for telemarketing calls made to Plaintiff's telephone number in alleged violation of the Telephone Consumer Protection Act ("TCPA"). In addition to his individual claim, Plaintiff seeks to represent a putative class of allegedly similarly situated consumers. The undisputed record confirms that, effective November 11, 2020, Torchlight and Call Centrix entered a contract that was memorialized by execution of an Insertion Order with accompanying Terms and Conditions (collectively the "Agreement"). Under the Agreement, Call Centrix agreed to provide Torchlight with transfers of telephone calls with consumers who had provided valid prior express written consent to receive telemarketing calls about insurance. Call Centrix was responsible for placing the calls and/or was responsible for any vendors that it employed for that purpose. One of the calls alleged to be at issue in Mr. Moore's Amended Complaint was made by Call Centrix's vendor, Wolf BPO, and transferred by Call Centrix to Torchlight under the Agreement. On July 13, 2022, Torchlight filed Cross-Claims against Call Centrix based on, *inter alia,* contractual

1

indemnification and breach of contract. (Dkt. No. 63.) Following a deposition of Call Centrix, the parties jointly requested permission for Torchlight to file this motion seeking resolution as a matter of law as to Cross-Claim Nos. 1 and 3. (Dkt. No. 74.) This motion follows.

The Agreement allocates liability between Torchlight and Call Centrix for a claim like Mr. Moore's. Specifically, the Agreement requires Call Centrix to indemnify and defend Torchlight from and against, *inter alia,* claims, damages, and expenses arising from actual or alleged breaches of Call Centrix's representations. Call Centrix concedes that Mr. Moore's underlying claims arise out of Call Centrix's alleged breaches of the Agreement. Thus, Call Centrix owes Torchlight contractual indemnification. Yet, Call Centrix refuses to defend and indemnify Torchlight from its Losses. The undisputed record confirms that Torchlight is entitled to summary judgment as to Cross-Claim No. 1, for contractual indemnification and defense.

The undisputed record further confirms that Call Centrix is liable to Torchlight for multiple breaches of the Agreement. Specifically, Call Centrix was required to maintain and produce records for every consumer lead it sold Torchlight; however, it has been unable to produce any such evidence for Mr. Moore and cannot identify any facts or evidence meeting that obligation for the putative class. Additionally, Call Centrix was required to maintain insurance coverage for the services it provided and to specifically name Torchlight as an additional insured, but Call Centrix failed to maintain any insurance, much less a policy that identified Torchlight. Further, Call Centrix's refusal to indemnify and defend Torchlight for its Losses arising from this case stands as a separate breach of the Agreement. Finally, Call Centrix was required, but failed, to monitor and take responsibility for, its vendors' compliance with the Agreement. Ultimately, Call Centrix concedes that it "made efforts to try and comply but did breach the agreement with Torchlight." No reasonable fact finder could conclude otherwise. Thus, Torchlight is entitled to a judgment that

Call Centrix breached the Agreement and is liable to Torchlight for all damages, costs, and fees arising from those breaches under Cross-Claim No. 3.

## SUMMARY OF UNDISPUTED FACTS

Torchlight provides marketing services to companies in the insurance and specialty finance industries. (SoF ¶ 1.)[1] Torchlight hired Call Centrix to provide "compliant lead generation" and call center services pursuant to the Agreement. (SoF ¶¶ 2, 3.) The Agreement serves as the undisputed controlling terms between the parties. (SoF ¶ 3.)[2] The Agreement included representations and warranties by Call Centrix, which Call Centrix understood and promised to abide by. (SoF ¶¶ 3, 11.) Under the Agreement, Call Centrix (through its vendors) transferred some of its consumer calls to Torchlight's customers. (SoF ¶ 5.) On March 22, 2021, Wolf BPO transferred a call with Mr. Moore to Torchlight. (SoF ¶¶ 2, 6.) That call serves as the factual predicate for Mr. Moore's individual TCPA claims against Torchlight. (SoF ¶¶ 6-7, 53.)

### I.  Call Centrix was Contractually Required to Maintain and Produce Records

The Agreement required Call Centrix to ensure the consumer information it collected was from consumers who provided compliant prior express written consent to receive telemarketing calls. (SoF ¶ 14.) It further agreed "to provide to Torchlight, upon request, proof of such prior express written consent for all Consumer Information provided to Torchlight." (SoF ¶ 14.) Call Centrix represented to Torchlight that all of Call Centrix's transfers came with consent validated by third-party software. (SoF ¶ 16.) Call Centrix agreed that it would maintain and, upon request, produce records of such consumer consent within five business days. (SoF ¶ 14.)

---

[1]  In support of its motion, Torchlight relies upon its separate Statement of Material Facts, filed concurrent with this memorandum of law and all citations in this memorandum designated as "SoF" refer to the specific paragraphs in that statement. LR 56.1(a), (d), (g).
[2]  The Agreement is governed by and construed under the laws of the Commonwealth of Pennsylvania and the United States without regard to conflicts of law provisions. (SoF ¶ 3.)

Call Centrix did not maintain and cannot produce the records required under the Agreement. Call Centrix concedes it has no valid record showing Mr. Moore's consent to be called. (SoF ¶ 23.) Call Centrix produced a record in this case that it alleged represented Mr. Moore's consent for telemarketing calls, but that record proved to be "fabricated." (SoF ¶¶ 20-22.) Call Centrix has no evidence of valid prior written express consent to telemarket calls to Mr. Moore. (SoF ¶ 17.) Similarly, Call Centrix cannot identify any record evidence showing valid prior express written consent for telemarketing calls to any member of the putative class. (SoF ¶ 18.)

The Agreement required Call Centrix to preserve records of all calls made and written consent from the consumer for each call made pursuant to the Agreement for five years. (SoF ¶ 24.) But Call Centrix concedes that it did not have a written recordkeeping policy, it did nothing to ensure its vendors preserved records of calls, and it took no steps to evaluate its vendors' recordkeeping practices. (SoF ¶¶ 25-26.) Call Centrix has no records of any calls made by the vendor that it reports made the March 22, 2021 call to Mr. Moore, Wolf BPO. (SoF ¶¶ 6-7, 27.)

## II.     Call Centrix was Contractually Required to Obtain Insurance Coverage

The Agreement required Call Centrix to obtain insurance coverage for its actions under the Agreement and to name Torchlight as an additional insured. (SoF ¶ 42.) However, Call Centrix admits that it did not obtain insurance coverage for the services it provided to Torchlight and did not obtain insurance coverage that named Torchlight as an additional insured. (SoF ¶¶ 43, 44.)

## III.     Call Centrix is Contractually Required to Indemnify and Defend Torchlight

The Agreement required Call Centrix to indemnify and defend Torchlight upon receipt of a proper third-party claim or demand

> from and against any and all claims, costs, losses, damages, judgments and expenses (including reasonable attorneys' fees) (collectively, "Losses") suffered, sustained or incurred by [Torchlight] and [its members, managers, partners, officers, employees, contractors and agents] in connection with any third-party claim or demand that arises out of or relates to (a) any actual or alleged breach of

4

> [Call Centrix's] express representations or warranties in this Agreement; or (b) a violation of applicable Laws by [Call Centrix] or its personnel.

(SoF ¶ 48.) If Call Centrix failed to promptly assume the defense of such claim, then Torchlight may participate in the defense with its own counsel but at Call Centrix's expense. (SoF ¶ 49.)

Call Centrix agrees that Mr. Moore alleges to have received telemarketing calls in violation of the TCPA, that Torchlight is accused of being liable for calls made by Call Centrix's vendors, and that Mr. Moore's allegations arise out of an alleged breach of the Agreement. (SoF ¶ 53.) It is undisputed that Torchlight made an indemnity demand to Call Centrix; however, Call Centrix refuses to indemnify Torchlight for its Losses incurred in connection with this case. (SoF ¶¶ 52, 56.) Call Centrix's stated basis for denying Torchlight's demand is its belief that there was only one call to Mr. Moore relevant to the Agreement and because Wolf BPO is the one to blame. (SoF ¶ 57.) Ms. Stitz stated: "[T]hey brought us down this rabbit hole, and that is all." (*Id.*)

### IV.    Call Centrix was Contractually Required to Ensure Vendor Compliance

The Agreement required Call Centrix to ensure that its vendors were in full compliance with the terms of the Agreement. (SoF ¶ 28.) Call Centrix relied on its vendors to provide services on its behalf under the Agreement. (SoF ¶ 29.) Call Centrix represented that it would monitor and control its vendors and understood that it was responsible for its vendors' actions under the Agreement. (SoF ¶ 32.) However, Call Centrix had neither written contracts with its call center vendors nor written policies concerning selection or monitoring of its calling vendors, and it concedes that it had no monitoring or control over the vendor that called Mr. Moore, Wolf BPO. (SoF ¶¶ 31, 34, 37.) Call Centrix never completed any audit or review of Wolf BPO. (SoF ¶ 37.)

Similarly, Call Centrix had no written policies concerning selection or monitoring of its lead vendors, and it did no due diligence to validate the lead sources used by Wolf BPO. (SoF ¶ 31.) While Call Centrix understood that its vendors were "supposed to" scrub their data through

5

Blacklist Alliance—a service Call Centrix states removes numbers listed on the federal Do Not Call Registry—Call Centrix has no evidence that its vendors ever did so. (SoF ¶ 39.) Similarly, while Call Centrix understood that its vendors were "supposed to" make calls based on leads validated with TrustedForm or Jornaya software, it has no evidence that calls were actually supported by that lead validation. (SoF ¶ 40.) Call Centrix now states the call to Mr. Moore was made from a list of telephone numbers that was not a valid consent record under the parties' agreement. (SoF ¶ 41.)

Call Centrix argues that it *tried* to comply with the Agreement, but concedes that it "did breach the agreement with Torchlight." (SoF ¶ 55.)

### V. Torchlight Met its Contractual Obligations and Terminated the Agreement

Torchlight paid Call Centrix approximately nine hundred thousand dollars for services under the Agreement. (SoF ¶ 45.) Torchlight paid Call Centrix pursuant to the Agreement until Torchlight recognized that Call Centrix materially breached, at which point, Torchlight terminated the Agreement. (SoF ¶ 46.) Other than withholding that final payment, Call Centrix agrees there are no facts or evidence supporting the conclusion that Torchlight failed to perform its duties under the Agreement. (SoF ¶ 47.) Certain of Call Centrix's obligations survive Agreement termination, including duties to maintain and produce records and to defend and indemnify. (SoF ¶ 46.)

## ARGUMENT

Torchlight is entitled to summary judgment on its Cross-Claim Nos. 1 and 3, as to Call Centrix's liability for contractual indemnification and breach of contract.

### I. Legal Standard

"Summary judgment is proper where the admissible evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Hanover Ins. Co. v. Northern Bldg. Co.*, 751 F.3d 788, 791 (7th Cir. 2014). "A 'material

fact' is one identified by the substantive law as affecting the outcome of the suit." *Id.* (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986)). In determining whether a genuine issue of material fact exists, courts view the record "in the light most favorable to the nonmoving party." *Id.* Summary judgment should be granted when the factual record taken as a whole could not lead a rational trier of fact to find for the non-moving party. *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348 (1986)). Contract cases "are often prime candidates for summary judgment because contract interpretation is a question of law." *Id.*

## II. Call Centrix Must Indemnify and Defend Torchlight

Call Centrix agreed to indemnify and defend Torchlight against Losses relating to any actual or alleged breach of its representations and warranties. (SoF ¶ 48.) Even before reaching the question of actual breach, it is undisputed that Mr. Moore's claims arise out of Call Centrix's alleged breaches of the Agreement. (SoF ¶ 54.) That is all that is required to be shown under the Agreement. Thus, Call Centrix owes Torchlight indemnification and defense.

### A. Call Centrix Must Indemnify Torchlight for all Losses

Indemnity agreements are enforceable under Pennsylvania law. *See Total Landscaping Care, LLC v. Tower Cleaning Sys., Inc.*, No. 10-6542, 2012 WL 676981, at *7 (E.D. Pa. Mar. 1, 2012). Their interpretation is a matter of law for the Court. *Id.* When interpreting indemnity agreements, Courts "should examine the parties' intentions by reviewing the language of the . . . provision at issue." *Id.* Courts interpret indemnity agreements narrowly, but honor "the parties' intentions as evidenced by the entire contract." *Consol. Rail Corp. v. Delaware River Port Auth.*, 880 A.2d 628, 632 (Pa. Super. Ct. 2005); *see also Maule v. Philadelphia Media Holdings, LLC*, No. 08-3357, 2010 WL 914926, at *3, 6, 10-11 (E.D. Pa. 2010) (granting summary judgment for

7

indemnitee based on unambiguous contractual indemnity provision). Where, as here, the parties allocated the right of indemnification, the Court should enforce that agreement.

The allocation of liability for "claims, costs, losses, damages, judgments, and expenses (including reasonable attorney's fees)" is reasonable and enforceable. For example, in *Widmer Engineering, Inc. v. Dufala*, the court upheld a contractual indemnity provision with similar language based on an alleged breach of representations by a business seller. *See* 2003 Pa. Super. Ct. 391, 837 A.2d 459, 462 (2003). Following sale of the business, a third-party sued the buyer and seller for liability arising from a breach of representation by the seller. *Id.* Based on clear contractual language, the court affirmed an award of attorneys' fees and settlement costs arising from the third-party claim to the buyer-indemnitee. *Id.* at 472.

In *Vazquez v. TriAd Media Solutions, Inc.*, the Court of Appeals for the Third Circuit (acting under New York law) similarly upheld an indemnity provision in a contract for advertising services when, like here, a consumer-plaintiff alleged violation of the TCPA.[3] *See* 797 F. App'x 723 (3d Cir. 2019). TriAd Media Solutions, Inc. ("Triad") retained Zeta Interactive Corp. ("Zeta") to provide digital marketing services. *Id.* at 724. After Ms. Vazquez received a marketing text message from Zeta, she filed a putative TCPA class action against Triad and Zeta, and Triad cross-claimed against Zeta for contractual indemnification. *Id.* The court affirmed Zeta's obligations, "at a minimum, to indemnify [Triad] for claims of TCPA violations relating to the advertising campaign Zeta contracted to promote." *Id.* at 725. The Third Circuit confirmed that "even without a proven TCPA violation," indemnification was required based on a fair reading of coverage for

---

[3] The laws of New York and Pennsylvania regarding contractual indemnification are similar. *See Vazquez*, 797 F. App'x 725 (analysis of New York law).

any "claims" that are "arising from any violation" of the law. *Id.* at 726. Thus, the Court affirmed an award of damages. *Id.* The same result is warranted here.

Call Centrix agreed to indemnify Torchlight in connection with "any third-party claims, losses, damages, judgments and expenses (including reasonable attorneys' fees) . . . in connection with any third-party claim or demand that arises out of or relates to (a) any actual or alleged breach of [Call Centrix's] express representations or warranties in this Agreement." (SoF ¶ 48.) Call Centrix agrees, as it must, that Mr. Moore's claims against Torchlight arise out of alleged breaches of the Agreement. (SoF ¶ 54.) It is further undisputed that Torchlight made an indemnification demand and yet Call Centrix refused to indemnify Torchlight for its Losses. (SoF ¶¶ 52, 56.)

When challenged, Call Centrix sought to blame one of its vendors. (SoF ¶ 57.) However, that does not alter Call Centrix's contractual liability to Torchlight. *Vazquez,* 797 F. App'x at 725 (citation omitted) ("When the intent is clear, an indemnification agreement will be enforced even if it provides indemnity for one's own or a third party's negligence.") Here, the Agreement confirmed that Call Centrix is responsible for its vendors' conduct or breaches. (SoF ¶¶ 28, 32.) Given the clear intent of the parties, Call Centrix is required to indemnify Torchlight for the conduct of Call Centrix and/or Call Centrix's vendors.

Call Centrix owes indemnification to Torchlight. No reasonable jury could find otherwise.

### B. Call Centrix Must Compensate Torchlight for its Defense in this Case

Under Pennsylvania law, "the duty to defend is separate and distinct from the duty to indemnify." *Maule*, 2010 WL 914926, at *10. The duty to defend is triggered if the facts of the complaint would support indemnification under the agreement, "and the indemnitor must defend until such time as the claim is confined to recovery that the contract does not cover." *Id.*

Call Centrix contractually agreed to defend Torchlight for a claim arising out of its alleged breach of contractual representations or warranties. (SoF ¶ 48.) That requirement is triggered upon

9

receipt of the third-party claim for which Torchlight is entitled to indemnification. (SoF ¶ 48.) Yet, Call Centrix refused to provide a defense and refuses to compensate Torchlight. (SoF ¶ 56.)

In addition to the right to "reasonable attorneys' fees" within the definition of "Losses" under the Agreement, the parties agreed that if Call Centrix failed to promptly assume the defense of a claim arising under the Agreement, that Torchlight may participate with its own counsel at Call Centrix's expense. (SoF ¶ 49.) Thus, Call Centrix is contractually liable for Torchlight's legal fees incurred in its defense. *See Fidelity-Philadelphia Trust Co. v. Philadelphia Transp. Co.*, 404 Pa. 541, 548-49 (1961) (holding attorneys' fees are recoverable from an adverse party when clearly agreed to by the parties); *Total Landscaping Care,* 2012 WL 676981, at *7 (finding receipt of claim or demand is sufficient basis to adjudicate liability when consistent with agreement). Under the Agreement, Call Centrix must compensate Torchlight for its defense. No reasonable fact finder could find otherwise. Thus, Torchlight is entitled to summary judgement on its claim for defense.

Call Centrix owes a contractual duty to indemnify and defend Torchlight for its Losses and all damages arising from Mr. Moore's claims. Call Centrix has refused. Call Centrix's refusal lacks merit, and the undisputed record confirms Call Centrix's liability. Thus, Torchlight is entitled to summary judgment on Cross-Claim No. 1, its claim for contractual indemnification.

### III. Call Centrix Breached the Agreement

Call Centrix breached its unambiguous contractual obligations to Torchlight. A "breach of contract is a nonperformance of any contractual duty of immediate performance." *Camenisch v. Allen*, 44 A.2d 309, 310 (1945). A claim for breach arises "when it can be shown there was a contract, a breach of a duty imposed by that contract, and damages that resulted from the breach." *Orbisonia-Rockhill Joint Mun. Auth. v. Cromwell Twp., Huntingdon Cnty.*, 978 A.2d 425, 428 (Pa. Commw. Ct. 2009). Torchlight and Call Centrix agree that they had a valid contract and that Call

10

Centrix breached it (SoF ¶¶ 3, 55); thus, the Court should grant Torchlight summary judgment as to Cross-Claim Nos. 3, for breach of contract.[4]

Pennsylvania applies the "plain meaning rule" of contract interpretation to determine the parties' obligations. *Steuart v. McChesney*, 498 Pa. 45, 48-49 (1982). It is "well established" in Pennsylvania "that the intent of the parties to a written contract is . . . embodied in the writing itself, and when the words are clear and unambiguous, the intent is to be discovered only from the express language of the agreement." *Id.* An unambiguous contract "speaks for itself." *Id.* at 49.

Under the Agreement, Call Centrix had unambiguous duties to (A) maintain and produce records; (B) obtain insurance for the services it provided and name Torchlight as an additional insured; (C) provide indemnity and defense to Torchlight for certain claims; and (D) ensure its vendors complied with the Agreement. Call Centrix concedes that it breached each of these duties.

### A. Call Centrix Breached its Duty to Maintain and Produce Records

Call Centrix had an unambiguous contractual duty to only transfer calls with consumers that provided valid, compliant, prior express written consent to receive telemarketing calls. (SoF ¶ 14.) Call Centrix represented that it would preserve, for five years, records of all calls made and written consent from the consumer for each call made pursuant to the Agreement. (SoF ¶¶ 14, 24.) And Call Centrix committed to providing Torchlight with "proof of such prior express written consent" for any consumer lead sold to Torchlight within five business days. (SoF ¶ 14.) Call Centrix did not maintain and cannot produce records to meet its contractual obligations.

Call Centrix breached its contractual obligations to maintain and produce records. Call Centrix concedes that it has no valid consent disclosure showing Mr. Moore's consent to be called.

---

[4] At this stage, Torchlight seeks an order confirming Call Centrix's liability for breach with a specific amount of (ongoing) damages to be set once Torchlight's full damages are known to the parties.

11

(SoF ¶ 23.) In fact, the one record of consent that Call Centrix produced in this case was "fabricated." (SoF ¶¶ 19-22.) Further, Call Centrix cannot identify any document produced in this matter that shows valid prior express written consent for telemarketing calls to any member of the putative class. (SoF ¶ 18.) Call Centrix also concedes that it did nothing to ensure its vendors preserved records of calls made, and it has no call records from the vendor that called Mr. Moore and other putative class members, Wolf BPO. (SoF ¶¶ 6, 26, 27.)

The undisputed record confirms that Call Centrix breached the Agreement by failing to maintain and produce records of consumer consent and consumer calls.

### B. Call Centrix Breached its Duty to Obtain Insurance Coverage

Call Centrix had an unambiguous contractual duty to obtain insurance covering its services under the Agreement and to name Torchlight as an additional insured. (SoF ¶ 42.) The Agreement required Call Centrix to procure comprehensive general liability insurance with limits of One Million Dollars per occurrence and Two Million Dollars in the aggregate and an errors and omissions policy with limits of One Million Dollars. (*Id*.) The policies were required to "name Torchlight as an additional insured." (*Id*.) Call Centrix did not obtain any insurance coverage for the services it provided to Torchlight much less coverage that named Torchlight. (SoF ¶¶ 43-44.)

The undisputed record confirms that Call Centrix breached the Agreement by (1) failing to obtain the required insurance coverage; and (2) failing to obtain insurance coverage that named Torchlight as an additional insured.

### C. Call Centrix Breached its Duty to Indemnify and Defend Torchlight

As discussed above, Call Centrix has an unambiguous contractual obligation to indemnify and defend Torchlight from and against Losses relating to any actual or alleged breach of its representations and warranties or its violations of law. (SoF ¶ 48.) Call Centrix's failure to honor that obligation stands as a further breach of the Agreement.

Call Centrix concedes, as it must, that Mr. Moore's allegations in this case arise out of an alleged breach of the Agreement by Call Centrix. (SoF ¶ 53.) That, in and of itself, is sufficient to trigger the duty of defense and indemnification. *See infra,* Section II.A. Torchlight made an indemnity and defense demand to Call Centrix. (SoF ¶ 52.) Call Centrix refused to meet its obligations. (SoF ¶ 56.) The failure to meet that duty is itself a breach of the Agreement.

The undisputed record shows that Call Centrix breached the Agreement by refusing to honor its obligations to indemnify and defend Torchlight for all Losses in this case.

### D. Call Centrix Breached its Duty to Ensure its Vendors Fully Complied with the Terms of the Agreement

Call Centrix had an unambiguous contractual duty to ensure its vendors fully complied with the terms of the Agreement, represented that it would monitor and control its vendors, and agreed to be liable for any breach of the Agreement by its vendors (SoF ¶¶ 28, 36); however, Call Centrix failed to meet its oversight duty.

Call Centrix failed to ensure its vendors' compliance with the Agreement. For example, Call Centrix had no written policies relevant to the selection and monitoring of its lead vendors or its calling vendors. (SoF ¶ 31.) Call Centrix had no written contracts with its calling vendors and has no information about their compliance procedures or relevant policies. (SoF ¶¶ 34-35.) Call Centrix had no monitoring or control over the vendor that called Mr. Moore (Wolf BPO), and never completed any audit or review of Wolf BPO. (SoF ¶ 37.) Call Centrix concedes that it did nothing to ensure its vendors preserved records of calls made and took no steps to evaluate its vendors' recordkeeping practices. (SoF ¶ 26.) While Call Centrix understood that its vendors were "supposed to" take certain compliance actions, it has no evidence that they actually met those requirements. (SoF ¶¶ 39-40.) When Mr. Moore's claim arose, Call Centrix was unable to provide calling records for the entity that called him, and then Call Centrix's vendor provided it with a

13

"fabricated" record of consent, which Call Centrix produced in this case. (SoF ¶¶ 17, 19-23.) As discussed above, neither Call Centrix nor its vendor could produce a valid record of consent for Mr. Moore, and Call Centrix cannot identify any evidence in the record showing valid prior express written consent for any of the calls Call Centrix's vendors made to putative class members. (SoF ¶¶ 17-18, 23.) Despite its obligations and contractual requirements, Call Centrix now reports that the call to Mr. Moore was made by Call Centrix's vendor from a list of telephone numbers that was not a valid consent record under the Agreement. (SoF ¶ 41.) Call Centrix failed to ensure its vendors complied with the Agreement and the undisputed record confirms that Call Centrix's vendors did not comply with the Agreement.

The undisputed record shows that Call Centrix breached the Agreement by failing to ensure its vendors fully complied with the Agreement.

\* \* \*

Each of the four categories above stands as separate and independent bases upon which Call Centrix breached the Agreement and for which Torchlight is owed relief. The record on breach is so undisputed that Call Centrix concedes that despite some purported efforts to comply, Call Centrix "did breach the agreement with Torchlight." (SoF ¶ 55.) On this record, any reasonable jury must find that Call Centrix breached the Agreement and is liable to Torchlight for all its Losses arising from Plaintiff George Moore's claims. Torchlight is entitled to summary judgment as to Cross-Claim No. 3, for Call Centrix's breach of contract.

## **CONCLUSION**

For the reasons stated herein Torchlight's Motion for Summary Judgment on its Cross-Claims for Contractual Indemnity and Breach of Contract against Call Centrix LLC should be granted.

Respectfully submitted, this 11th day of October, 2022.

          FOX ROTHSCHILD LLP

          */s/ Paul A. Rosenthal*
          Paul A. Rosenthal
          49 Market Street
          Morristown, NJ 07960
          Tel: (973) 548-3388
          prosenthal@foxrothschild.com

          Marc C. Smith (6189574)
          321 N. Clark Street, 16th Floor
          Chicago, IL 60654
          312 517-9238
          Tel: (312) 517-9238
          mcsmith@foxrothschild.com

          *Counsel Defendant/Cross-Claim Plaintiff*
          *Torchlight Technology Group LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 11, 2022, I caused a true and correct copy of the *MEMORANDUM OF LAW IN SUPPORT OF TORCHLIGHT TECHNOLOGY GROUP, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST CALL CENTRIX, LLC FOR CONTRACTUAL INDEMNITY AND BREACH OF CONTRACT* to be filed via the Court's CM/ECF System and thereby served via e-mail on all counsel of record.

*/s/ Paul A. Rosenthal*
Paul A. Rosenthal

*Counsel for Defendant / Cross-Claim Plaintiff Torchlight Technology Group LLC*