IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GEORGE MOORE, on behalf of himself and others similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>TORCHLIGHT TECHNOLOGY GROUP LLC, CALL CENTRIX LLC, CAROL STITZ,<br><br>      Defendants.<br><br>TORCHLIGHT TECHNOLOGY GROUP LLC,<br><br>      Cross-Claim Plaintiff<br><br>v.<br><br>CALL CENTRIX LLC,<br><br>      Cross-Claim Defendant | CIVIL ACTION FILE NO. 1:21-cv-2403 |

**Torchlight Technology Group's Local Rule 56.1(a)(2)**
**Statement of Material Facts**

Consistent with L.R. 56.1, Torchlight Technology Group ("Torchlight") sets forth the following statement of material facts as to which there is no genuine issue and that entitle Torchlight to a judgment as a matter of law:

**Description of Parties**

1. Torchlight is a provider of marketing services to companies in the insurance and specialty finance industries. (Dkt. No. 68 (Answer to Cross-Claims) ¶ 7.)

2. Call Centrix, LLC ("Call Centrix") provides what it advertises to be "compliant lead generation" call center services. (Exhibit 1: Sept. 13, 2022 Rule 30(b)(6) Dep. of Call Centrix, LLC by Carol Stitz CEO ("Stitz Dep.") 38:10-14.)

3. The relationship between Torchlight and Call Centrix was governed by an Insertion Order and attached Terms and Conditions commencing November 11, 2020 (collectively, the "Agreement"). (Exhibit 1: Stitz Dep. 77:7-78:17, Ex. 6; Dkt. No. 63 (Cross-Claims) ¶ 14, Ex. A; Dkt. 68 (Answer to Cross-Claims) ¶ 14.) There have been no signed, written amendments or modifications of the Agreement. (Exhibit 1: Stitz Dep. 78:3-12.) The Agreement is governed by and construed under the laws of the Commonwealth of Pennsylvania and the United States without regard to conflicts of law provisions thereof. (Ex. 2: Agreement § 13.3.) A true and correct copy of the Agreement is enclosed as Exhibit 2.

4. Call Centrix was not operating an exclusive calling campaign for Torchlight, and calls made to consumers by or on behalf of Call Centrix could have been transferred to multiple different companies. (Dkt. No. 68 (Answer to Cross-Claims) ¶¶ 27-30; Exhibit 1: Stitz Dep. 98:3-10, 181:2-6.)

5. During the relevant time period, Call Centrix transferred some of its consumer calls to Torchlight's customers under the Agreement. (Dkt. No. 68 (Answer to Cross-Claims) ¶ 29; Exhibit 1: Stitz Dep. 45:3-8.)

6. On March 22, 2021, Call Centrix (through its vendor Wolf BPO) placed a call to Plaintiff George Moore and transferred that call to a Torchlight customer. (Dkt. No. 68 (Answer to Cross-Claims) ¶ 31; Exhibit 1: Stitz Dep. 36:22-24, 90: 22-91:3, 119:8-12.)

7. That March 22, 2021 call serves as the factual predicate for Mr. Moore's individual claims against Torchlight. (Dkt. No. 32 (First Amended Complaint) ¶ 31.)

8. Mr. Moore alleges that a call, transferred by Call Centrix to a Torchlight customer under the parties' Agreement, was made in violation of the Telephone Consumer Protection Act

("TCPA"). (Dkt. No. 32 (First Amended Complaint) ¶¶ 25, 27, 28, 31, 43, 79; Dkt. No. 68 (Answer to Cross-Claims) ¶ 33.)

### Venue and Jurisdiction

9. This Court has subject matter jurisdiction over Torchlight's claims under 28 U.S.C. § 1331 and under 28 U.S.C. § 1367(a) because they are so related to Plaintiff's claims that they form part of the same case or controversy under Article III of the United State Constitution. (Dkt. No. 68 (Answer to Cross-Claims) ¶ 4.)

10. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events giving rise to this action occurred in the Northern District of Illinois. (Dkt. No. 68 (Answer to Cross-Claims) ¶ 5.)

### The Agreement and Call Centrix's Breaches

11. The Agreement required specific obligations of Call Centrix and included representations and warranties by Call Centrix. (Exhibit 2: Agreement; Exhibit 1: Stitz Dep. 96:10-14.) Call Centrix understood its obligations under the Agreement and promised to abide by them. (Exhibit 1: Stitz Dep. 96:15-20.)

12. The Agreement required Call Centrix to comply with "all Laws applicable to its performance" thereunder, including the TCPA and its regulations. (Exhibit 2: Agreement §§ 1.12, 9.1; *see also* Exhibit 1: Stitz Dep. 107:23-108:3.)

13. Call Centrix understood that Torchlight relied on it to ensure that calls were legally compliant. (Exhibit 1: Stitz Dep. 111:13-17.)

#### *Call Centrix's Obligations to Maintain and Produce Evidence of Consent*

14. The Agreement included the following requirements for consumer leads that Call Centrix would transfer to Torchlight:

> In the event any Consumer Information contained in Leads provided to Torchlight includes telephone numbers, Publisher [Call Centrix] represents, warrants and covenants that (x) such Consumer Information ***has and will be collected from Consumers who have provided prior express written consent as required under the Telephone Consumer Protection Act, 42 USC 227 and 47 CFR 64.200 and Do Not Call List requirements*** and any applicable rules, regulations or guidelines so that Torchlight, its customers, Lead purchasers and their respective agents, may call any telephone or mobile phone numbers contained within the Lead for the purpose of providing quotes or offers for the product or service indicated by the Consumer, including but not limited to through the use of an automatic telephone dialing system or prerecorded or artificial voice message or text message, (y) such Consumer has been informed that his/her consent is not a condition of purchase; and (z) ***Publisher [Call Centrix] agrees to provide to Torchlight within five (5) business days after written request, proof of such prior express written consent for all Consumer Information provided to Torchlight, which proof will include, in addition to all other information or evidence reasonably requested by Torchlight, screenshots of the disclaimer and consent language appearing on mediums from which Consumer Information was collected***, the IP address of the source of the Consumer Information, and the date and time stamp indicating the time the Consumer Information was collected and in the case of a telemarketing campaign by Publisher [Call Centrix], an audio recording of the Consumer's verbal consent.

(Exhibit 2: Agreement § 8.4(a) (emphasis added));

> Further, [Call Centrix] represents, warrants and covenants that . . . (ii) the Consumers have affirmatively consented to the collection, transfer and use of Leads, their Consumer Information and Nonpersonal Data as contemplated by the applicable IO and this Agreement. . . .

(Exhibit 2: Agreement § 9.2);

> A Lead is a Valid Lead if it meets all the criteria expressly stated in an IO and . . . (v) is not fraudulent or generated by an automated program, incentivized by compensation or other incentives . . . and (vi) is not generated in violation of any representation, warranty or obligation of [Call Centrix] under this Agreement."

(Exhibit 2: Agreement § 5.3).

15. Call Centrix expects that any customer purchasing transfers based on outbound calls to consumers would expect all calls to be supported by valid prior written consent. (Exhibit 1: Stitz Dep. 73:14-20.)

4

16. Prior to executing the Agreement, Call Centrix represented to Torchlight that all of Call Centrix's transfers came with consent validated by third-party software from either TrustedForm or Jornaya. (Exhibit 1: Stitz Dep. 88:24-89:5.)

17. Call Centrix does not have any evidence of valid prior written express consent to telemarket calls to Plaintiff George Moore. (Exhibit 1: Stitz Dep. 10:1-6; Dkt. No. 68 (Answer to Cross-Claims) ¶ 39.)

18. Call Centrix cannot identify any document produced in this matter that shows valid, prior express written consent for telemarketing calls to any member of the putative class. (Exhibit 1: Stitz Dep. 14:10-15:20, 142:3-8.)

19. Call Centrix produced a fabricated record of consent in this case. On or about July 23, 2021, Call Centrix produced a record that it alleged represented Mr. Moore's consent for telemarketing calls generated from the website FindQualityInsurance.com. (Exhibit 3: Subpoena Response of July 16, 2021; Exhibit 1: Stitz Dep. 133:20-134:16, 135:15-136:21, 137:15-138:8, 139:10-16; Dkt. No. 68 (Answer to Cross-Claims) ¶ 40.)

20. Mr. Moore denied having visited the website FindQualityInsurance.com and denied any connection to the IP address associated with the record produced by Call Centrix. (Exhibit 4: Pl.'s Response to Interrogatories No. 3, 4.)

21. In response to Plaintiff's third-party subpoena, FindQualityInsurance.com confirmed that it had no record of generating the lead or consent record produced by Call Centrix. (Exhibit 3: Subpoena Response of July 16, 2021.)

22. Call Centrix admits the evidence it produced purporting to show Mr. Moore's consent is not accurate. (Exhibit 1: Stitz Dep. 139:10-16.) In fact, it was proven to be "fabricated." (Dkt. No. 68 (Answer to Cross-Claims) ¶ 40.)

23. Call Centrix concedes there is no valid consent disclosure showing Mr. Moore's consent to be called. (Exhibit 1: Stitz Dep. 140:1-6, 140:18-21.)

24. The Agreement required Call Centrix to preserve records of all calls made and written consent from the consumer for each call made pursuant to the Agreement for five years. (Exhibit 2: Agreement § 8.4(a)).

25. Call Centrix did not have a written record keeping policy during the relevant period. (Exhibit 1: Stitz Dep. 20:1-5; Exhibit 5: Call Centrix's Response to Torchlight's First Requests for Production, No. 9 and Call Centrix's Supplemental Response to Torchlight's First Requests for Production, No. 9.)

26. Call Centrix concedes that it did nothing to ensure its vendors preserved records of calls made and took no steps to evaluate its vendors' recordkeeping practices. (Exhibit 1: Stitz Dep. 156:15-157:11.)

27. Call Centrix has no call records from Wolf BPO. (Exhibit 1: Stitz Dep. 183:14-22.)

***Call Centrix's Duty to Ensure Compliance of Vendors***

28. Call Centrix agreed that "If [Call Centrix] uses Sub-Publishers to perform this Agreement, then [Call Centrix] shall ensure such Sub-Publishers' full compliance with the terms hereof and [Call Centrix] shall be liable for any breach by such Sub-Publisher." (Exhibit 2: Agreement § 3.1; Exhibit 1: Stitz Dep. 150:16-20, 157:18-22, 158:12-16.)

29. Call Centrix testified that it relied on its vendors to provide services on its behalf under the Agreement and to assure compliance of the calls being transferred. (Exhibit 1: Stitz Dep. 45:3-8; 155:1-5.)

30. In addition to Wolf BPO, Call Centrix relied upon calls made by an unrelated, third-party entity in the Philippines named "Call Centrix, Inc." (Exhibit 1: Stitz Dep. 31:9-20, 34:9-35:17.)

31. Call Centrix had no written policies relevant to the selection and monitoring of its lead vendors or its calling vendors. (Exhibit 1: Stitz Dep. 110:9-18.) Call Centrix did not do any due diligence to validate the lead sources used by Wolf BPO. (Exhibit 1: Stitz Dep. 133:2-5.)

32. Call Centrix understood that it was responsible for its vendors' actions under the Agreement. (Exhibit 1: Stitz Dep. 109:19-23.)

33. Call Centrix represented to Torchlight that all of Call Centrix's transfers came with consent validated by either TrustedForm or Jornaya (Exhibit 1: Stitz Dep. 88:24-89:5); however, there are no documents supporting the contention that Call Centrix instructed its vendors to call only those persons providing consent verified by Jornaya or TrustedForm. (Exhibit 1: Stitz Dep. 119:13-120:1.)

34. Call Centrix had no written contracts with its call center vendors. (Exhibit 1: Stitz Dep. 20:6-10, 35:4-11, 74:7-15; *see* Exhibit 6: Call Centrix's Response to Pl.'s Requests for Production, No. 7-8.)

35. Call Centrix has no information about the compliance procedures of its two calling vendors and no information about their relevant policies. (Exhibit 1: Stitz Dep. 126:11-127:3.)

36. Call Centrix represented to Torchlight in the Agreement that it would monitor and control its vendors and Call Centrix committed to ensuring any vendor met all the requirements of the Agreement. (Exhibit 1: Stitz Dep. 157:12-158:16.)

37. Call Centrix had no monitoring or control over Wolf BPO, and Call Centrix never completed any audit or review of Wolf BPO. (Exhibit 1: Stitz Dep. 120:8-11, 121:23-122:2.)

38. Call Centrix does not have a Chief Compliance Officer and did not have any compliance team or quality assurance team. (Exhibit 1: Stitz Dep. 111:18-20, 112:13-22.)

39. While Call Centrix understood that its vendors were "supposed to" scrub their data through Blacklist Alliance—a service that scrubs for numbers listed on the federal do not call registry and against a list of litigators—however, Call Centrix has no evidence that they did so. (Exhibit 1: Stitz Dep. 87:18-88:7, 91:23-92:10, 94:8-14.)

40. Similarly, while Call Centrix understood that its vendors were "supposed to" make calls supported by either TrustedForm or Jornaya validation, it has no evidence that calls were actually supported by that lead validation. (Exhibit 1: Stitz Dep. 91:23-92:10; 94:15-95:15.)

41. Call Centrix now understands the call to Mr. Moore was made from a list of telephone numbers that was not a valid consent record under the parties' Agreement. (Exhibit 1: Stitz Dep. 161:5-15.)

### *Call Centrix's Duty to Obtain Insurance Coverage*

42. Call Centrix agreed to obtain comprehensive insurance coverage for its actions under the Agreement and to list Torchlight as an additional insured. Specifically, Section 12 of the Agreement provided:

> During the term of this Agreement and for five (5) years thereafter, Publisher [Call Centrix] agrees to procure and maintain in force the following insurance policies (the 'Insurance Policies'): (i) comprehensive general liability insurance (including contractual liability coverage for indemnification) with minimum limits of One Million ($1,000,000) per occurrence and Two Million ($2,000,000) in the aggregate; and (ii) errors and omissions or professional liability insurance with minimum limits of One Million ($1,000,000) combined single limit. The Insurance Policies shall (a) name Torchlight as an additional insured, and (b) be placed with insurers reasonably acceptable Torchlight, having a Best's rating of no less than "A-" and licensed to do business in Pennsylvania. Publisher shall furnish to Torchlight upon written request an insurance certificate evidencing each of the Insurance Policies and the additional insured. Publisher shall provide thirty (30) days prior written notice to Torchlight in the event of cancellation of any of the Insurance Policies."

8

(Exhibit 2: Agreement § 12.)

43. Call Centrix did not obtain insurance coverage for the services it provided to Torchlight as required by the Agreement. (Exhibit 1: Stitz Dep. 21:9-12.)

44. Call Centrix did not obtain insurance coverage that named Torchlight as an additional insured as required by the Agreement. (Exhibit 1: Stitz Dep. 21:5-8.)

### *Torchlight's Performance and Termination of the Agreement*

45. Torchlight paid Call Centrix approximately nine hundred thousand dollars for the services Call Centrix provided under the Agreement. (Exhibit 1: Stitz Dep. 151:21-152:5; Dkt. No. 68 (Answer to Cross-Claims) ¶ 36.)

46. Torchlight paid Call Centrix pursuant to the Agreement up until Torchlight determined that Call Centrix materially breached the Agreement, at which point, Torchlight terminated the Agreement. (Exhibit 1: Stitz Dep. 149:2-150:7, 151:15-20; Dkt. No. 68 (Answer to Cross-Claims) ¶ 42.) Under Section 13.7 of the Agreement, "[t]he provisions of subsection 2.5 and Sections 5-13 shall survive termination of the Agreement, as will the payment, audit, or any other provisions that by their own nature should survive termination." (Exhibit 2: Agreement § 13.7.)

47. Other than withholding that final payment, Call Centrix agrees there are no facts or evidence supporting the conclusion that Torchlight failed to perform its duties under the Agreement. (Exhibit 1: Stitz Dep. 151:2-7; 151:15-20.)

### *Call Centrix Owes Torchlight Contractual Indemnification and a Defense*

48. Call Centrix agreed to indemnify, defend, and hold Torchlight harmless from any and all claims arising from any actual or alleged breach of the express representations or warranties Call Centrix made under the Agreement. Specifically, upon receipt of a third-party claim or demand for which Torchlight is entitled to indemnification:

      from and against any and all claims, costs, losses, damages, judgments and expenses (including reasonable attorneys' fees) (collectively, "Losses") suffered, sustained or incurred by [Torchlight] and [its members, managers, partners, officers, employees, contractors and agents] in connection with any third-party claim or demand that arises out of or relates to (a) any actual or alleged breach of [Call Centrix's] express representations or warranties in this Agreement; or (b) a violation of applicable Laws by [Call Centrix] or its personnel.

(Exhibit 2: Agreement §§ 11. 1, 11.2; Exhibit 1: Stitz Dep. 159:3-6.)

      49.    If Call Centrix fails to promptly assume the defense of such claim, then Torchlight may participate in the defense with its own counsel but at Call Centrix's expense. (Exhibit 2: Agreement § 11.2.)

      50.    In addition to falling within the definition of "Losses," the Agreement also provides that "[i]n the event of an action or proceeding by either Party to enforce or exercise its rights under the Agreement, the prevailing party shall be entitled to be reimbursed for its reasonable attorneys' fees and out-of-pocket legal costs in addition to other relief." (Exhibit 2: Agreement § 13.3.)

      51.    Call Centrix agrees that if Torchlight had not contracted with Call Centrix, then Call Centrix would not have transferred the call with Mr. Moore to Torchlight. (Exhibit 1: Stitz Dep. 154:6-11.)

      52.    Torchlight made an indemnity demand to Call Centrix in this case. (Dkt. No. 68 (Answer to Cross-Claims) ¶ 54; Exhibit 7: Letter of March 23, 2022; Exhibit 1: Stitz Dep. 190:19-22.)

      53.    Call Centrix agrees that Mr. Moore alleges to have received telemarketing calls in violation of the TCPA, that Torchlight is accused of being liable for calls made by Call Centrix's vendors, and Mr. Moore's allegations arise out of an alleged breach of the Agreement. (Exhibit 1: Stitz Dep. 142:9-23.)

54. Call Centrix concedes that Mr. Moore's claims against Torchlight arise out of alleged breaches of the Agreement. (Exhibit 1: Stitz Dep. 142:18-23.)

55. Call Centrix concedes that it tried to comply with the Agreement, but it "did breach the agreement with Torchlight." (Exhibit 1: Stitz Dep. 150:21-151:1.)

56. Still, Call Centrix has refused to indemnify Torchlight for its losses, costs, and damages incurred by Torchlight in connection with this action. (Exhibit 1: Stitz Dep. 24:14-19, 191:2-5.)

57. Call Centrix's stated basis for denying Torchlight's demand for indemnity is its belief that there was only one call to Mr. Moore under the Agreement and because Call Centrix's vendor Wolf BPO is the one to blame. Ms. Stitz stated: "It is their fault. … [T]hey brought us down this rabbit hole, and that is all." (Exhibit 1: Stitz Dep. 192:1-14, 197-1-16.)

Respectfully submitted, this 11th day of October, 2022.

FOX ROTHSCHILD LLP

*/s/ Paul A. Rosenthal*
Paul A. Rosenthal
49 Market Street
Morristown, NJ 07960
Tel: (973) 548-3388
prosenthal@foxrothschild.com

Marc C. Smith (6189574)
321 N. Clark Street, 16th Floor
Chicago, IL 60654
312 517-9238
Tel: (312) 517-9238
mcsmith@foxrothschild.com

*Counsel Defendant/Cross-Claim Plaintiff Torchlight Technology Group LLC*

11

**CERTIFICATE OF SERVICE**

I hereby certify that on October 11, 2022, I caused a true and correct copy of Torchlight Technology Group's Local Rule 56.1(a)(2) Statement of Material Facts to be filed via the Court's CM/ECF System and thereby served via e-mail on all counsel of record.

*/s/ Paul A. Rosenthal*
Paul A. Rosenthal

*Counsel for Defendant/Cross-Claim Plaintiff
Torchlight Technology Group LLC*